IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.  4:08-CR-066 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING BRIEF |
| ANTWAN CORTEZ WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

TABLE OF CONTENTS

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Advisory Sentencing Guideline Range. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Base offense level. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.    Role In The Offense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    Possession of a Dangerous Weapon.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    Obstruction Of Justice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    E.    Acceptance of Responsibility.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    F.    Career Offender? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    G.    Similar, Adult Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    H.    Final Advisory Guidelines Calculation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. Section 3553 (a) factors.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.    The nature and circumstances of the offense. . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B.    History and characteristics of the defendant. . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C.    The kinds of sentences available under relevant statutes
        and the advisory sentencing guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    D.    The need for the sentence imposed to reflect the seriousness of the offense, to
        promote respect for the law, and to provide just punishment for the offense. . . . 11
    E.    The need for the sentence imposed to afford adequate deterrence
        to criminal conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    F.    The need for the sentence imposed to protect the public from further
        crimes of the defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    G.    The need for the sentence imposed to provide the defendant with needed
        educational or vocational training, medical care, or other correctional
        treatment in the most effective manner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    H.    The need to avoid unwarranted sentence disparities among defendants with
        similar records who have been found guilty of similar conduct. . . . . . . . . . . . 13

IV. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# I. Introduction.

Antwan Cortez White, the defendant in this case, is a 34 year-old male, with a rather lengthy criminal history, charged in related indictments with various controlled substance and related firearm offenses. After being apprehended by federal marshals while hiding in Colorado as a fugitive from this Court's pretrial supervision, the defendant pled guilty to conspiracy to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A). The other charges will be dismissed after sentencing. If the government amends its notice of enhanced penalty at sentencing, as anticipated, Mr. White faces between 20 years and life in prison. His advisory guidelines range, as discussed below, is 360 months to life in prison.

Upon sentencing in this case, the government will move to dismiss the companion case, Crim. No. 08-cr-0064, in which Mr. White is charged with his acts in a conspiracy to distribute marijuana.

Based on all the factors in this case, including the nature of the offense; the defendant's history of charged and uncharged criminal conduct; his repeated failure to abide by conditions of court supervision and release, here and in earlier cases; and the need to protect the public from the defendant and deter him and others from dealing drugs, illegally possessing firearms, and fleeing from justice, the government respectfully recommends a sentence of 360 months in prison.

# II. The Advisory Sentencing Guideline Range.

The final Presentence Investigation Report ("PSR") was disclosed on January 21, 2011. (R. 190). Its ultimate conclusion is that the defendant is facing an advisory guidelines range of 324 -

405 months, unless the statutory, mandatory minimum of life applies. (PSR ¶ 35). The government argues this estimated range is 2-levels too low. Pursuant to its plea agreement, the government anticipates amending the notice of enhancement filed under 21 U.S.C. § 851 to reflect only one prior conviction, which would eliminate the mandatory minimum of life imprisonment. (PSR ¶ 36).

### A.     Base offense level.

The government objects to the cocaine base referenced in paragraph 30 not being attributed to the defendant.

It is clear from the PSR that "White, (James) Brown, and others were part of a network of individuals [who] obtained cocaine from Cisco Burton, and from one another" between 2004 and 2006. (PSR ¶ 10). According to Ronnie Cyrus, "White and Brown were drug partners, . . . [who] pooled their money to buy cocaine." (PSR ¶ 18). "At one point, White and Brown started buying a kilogram one or two times a per week from Burton." (PSR ¶ 20). It was common knowledge that Brown drove a "black GMC Yukon, a black Ford Mustang, and a gold Buick." (PSR ¶ 18). This relationship continued over the years. During the investigation of the conspiracy, "[e]ach time the CI left a location in Des Moines, Iowa, after one of his three deals with Brown, he saw White up the street a few blocks away." (PSR ¶ 23). These three deals were on December 19, 2007 (PSR at ¶ 23), February 4, 2008 (PSR ¶ 25), and March 10, 2008. (PSR ¶ 26). After the first deal, the CI saw Brown's car hook-up with White's Ford Expedition. (PSR ¶ 23). Brown was reported by his girlfriend to be the only person to drive the Ford Mustang (PSR ¶ 27), in which officers found 120.81 grams of cocaine base on march 12, 2008. (PSR ¶ 30). Similar tools of the drug-dealing trade were discovered in White's and Brown's apartments. (PSR ¶¶ 28, 34).

If the defendant is held accountable for the 120.81 grams of cocaine base found in his partner's vehicle, only days after they were seen by the CI associating with one another in relation to a cocaine base deal, and shortly after two others, the marijuana equivalency would be increased an additional 428877.1 grams of marijuana (3,571 grams x 120.1). This would increase the total involved in the offense from 3,294.74 kg to 3,723.617 kg. The advisory guideline range would remain at level 34, under USSG § 2D1.1.

**B.     Role In The Offense.**  The government objects to the PSR not imposing at least a 2-level enhancement under USSG § 3B1.1(c) for White's leadership role. The United States objects, because, at a minimum, the defendant supervised his marijuana and crack cocaine courier, Robert Perry. *United States v. Hazelett,* 80 F.3d 280, 284 (8th Cir. 1996).

Arguably, because the defendant supervised and managed one other person, and the criminal activity involved five or more people, namely Burton, White, Brown, Cyrus, Ritchie, and Perry, among others, a 3-level enhancement could apply, under USSG § 3B1.1(b).

The PSR declines to apply either USSG § 3B1.1 enhancement because "there is no evidence to suggest the defendant directed or supervised others, recruited accomplices, or claimed the right to a larger share of the profits from his transactions." (PSR at p. 40). This conclusion is contradicted by specific portions of the PSR, which explain how he directed and supervised Robert Perry, his courier or middleman, and, in fact, used him to perform these duties. These paragraphs have not been challenged, and are thus deemed admitted. *United States v. Bates*, 561 F.3d 754, 758 (8th Cir. 2009). The PSR also misconstrues the application notes to this Guideline, and ignores other application notes.

To the extent that the PSR focuses on a "share of the profits" analysis, it fails to consider that the factors listed in the commentaries to USSG § 3B1.1 need not all be present for this advisory guideline to apply. Additionally, the PSR's conclusion gives too much weight to this factor, and ignores other, undisputed factors, which support applying the enhancement.

This multi-drug conspiracy dates back to 2004. (PSR ¶ 10). After Robert Shakir Perry was released from prison in 2005, "he started acting as a middleman for White, originally dealing marijuana." (PSR ¶¶ 35). *United States v. Alexander,* 53 F.3d 888, 892-93 (8th Cir.1995) (finding 2-level role enhancement not clearly erroneous, because defendant "took a degree of responsibility for the distribution business" by delivering drugs to middlemen, cutting drugs for distribution, and transporting drugs interstate without supervision). Perry continued acting as a middleman for the defendant, at least, several months, until the Fall of 2005, when he started selling marijuana on his own. (PSR ¶¶ 35, 36). This conduct, alone, qualifies for a 2-level enhancement. White was also involved when Perry sold marijuana to a CI on January 11, 2008. (PSR ¶ 22).

However, Perry did more than that at White's behest. He later started delivering cocaine base, at White's direction:

> Perry advised he delivered "eight-ball" (3.5 grams) to quarter-ounce quantities of cocaine base to Joseph Spencer for White. Perry stated he also delivered "eight ball" (3.5 grams) to two ounce quantities of cocaine and cocaine base to Daughtery for White. Perry delivered the cocaine base and cocaine to Spencer and Daughtery several times a week, and would even deliver several times a day depending on the time of month and how much product they had to sell."

(PSR ¶ 38). According to Perry's proffer interview, on the day the search warrants were executed, White instructed Perry to get everything out of Palmer's house. (PSR ¶ 44).

5

Perry was clearly a "participant" in the conspiracy. USSG § 3B1.1, application note 1. And there is no doubt that the defendant managed or supervised Perry, when Perry acted as his middle-man. USSG § 3B1.1, application note 2. The defendant "exercised decision making authority" over his courier, Perry; during the "commission of the offense" Perry acted at the direction of the defendant; the defendant, at times, planned and organized Perry's deliveries of marijuana and crack cocaine; and the defendant had control and authority over Perry when Perry was making deliveries of marijuana and crack cocaine for him. USSG § 3B1.1, application note 4. This enhancement applies because "it is likely that persons who exercise a supervisory or managerial role in the commission of the offense tend to . . . present a greater danger to the public and/or are more likely to recidivate." USSG § 3B1.1, Background. The 2-level enhancement applies to a person who supervises even a single transaction, *United States v. Garrison,* 168 F.3d 1089, 1096 (8th Cir.1999) (enhancement applicable to management of even single transaction; evidence that courier received instructions from defendant sufficient to support enhancement) or to a drug-dealer who supervises even one other person in the conspiracy. *United States v. Jimenez-Gutierrez,* 425 F.3d 1123, 1124-5 (8th Cir. 2005) (applying enhancement to defendant who supervised single drug courier). In *United States v. Brown*, 539 F.3d 835 (8th Cir. 2008), the Eighth Circuit affirmed a 2- level increase under USSG § 3B1.1 for a defendant who simply supervised another person, with "little remuneration," as his "driver for drug transactions." *Id.* at 838. The PSR's failure to apply this 2-level increase is based on a gross misunderstanding of, and misapplication of, the guideline.

Thus, contrary to paragraph 46, there is evidence White "directed and supervised others." Accordingly, the United States objects to paragraphs 46, 56, 58 and 128 specifically, and the PSR

6

in general, for not applying the 2-level aggravating role adjustment under USSG §3B1.1(c). According to application note 2, the defendant need only be a leader, manager, or supervisor of one other participant to qualify for this adjustment. If the undisputed facts of the PSR are considered, and settled Eighth Circuit law is applied, there is no doubt that USSG § 3B1.1(c) applies, and a 2-level enhancement must be applied.

      **C.**      **Possession of a Dangerous Weapon.** The defendant stipulated in the plea agreement that a 2-level enhancement under USSG § 2D1.1(b)(1) applies because he possessed a dangerous weapon in connection with the offense. The PSR concurs. (PSR ¶ 54). This enhancement should apply.

      **D.**      **Obstruction Of Justice.** While on pretrial release, the defendant violated the conditions of his release by cutting off his electronic monitoring equipment and failing to appear at trial. He fled to Colorado, where he was apprehended, using an alias, "Eric," approximately one year later. The defendant stipulated in the plea agreement that a 2-level enhancement under USSG § 3C1.1 applies to his advisory guidelines sentence due to this conduct, and the PSR concurs. (PSR ¶¶ 50, 57). This enhancement should apply.

      **E.**      **Acceptance of Responsibility.** The PSR does not afford the defendant any credit under the advisory guidelines for accepting responsibility for his conduct, (PSR ¶¶ 51, 60). The defendant has not objected to the PSR's decision not to adjust the advisory guidelines range for acceptance of responsibility. The defendant should not be afforded any credit for accepting responsibility under the advisory guidelines.

**F.**     **Career Offender?**     The defendant comes dangerously close to being a career offender, under USSG § 4B1.1(a). He is over 18 years old, and has committed a felony that is a controlled substances offense. He has 2 prior drug convictions for possessing crack cocaine, (PSR ¶¶ 63, 66), a conviction for possession of a controlled substance, third offense, (PSR ¶ 79), and a conviction for possession of a controlled substance with the intent to deliver. (PSR ¶ 78). Though he admits he was dealing drugs for a profit between 2004 and 2008, and was undoubtedly making crack cocaine, he only has one conviction for distributing. Thus, he does not have a second qualifying conviction under USSG § 4B1.2(b) to merit classification as a career offender. Nevertheless, these facts underscore the seriousness of the defendant's criminal history.

**G.**     **Similar, Adult Conduct.** It is clear from the PSR that the defendant has been <u>dealing</u> drugs for a livelihood, <u>and manufacturing</u> crack cocaine, for years. However, he only has one conviction for possession with the intent to distribute. There is no doubt that he has engaged in prior "similar adult criminal conduct not resulting in a conviction," which indicates his criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3. *United States v. Rouillard*, 474 F.3d 551 (8th Cir. 2007) (affirming upward departure based on "several unscored criminal acts"). The defendant's similar, adult conduct should, at a minimum, be a factor in determining what sentence is appropriate, and where within the applicable guidelines range the defendant should be sentenced.

**H.**     **Final Advisory Guidelines Calculation.** The total offense level should be 40 (not 38), and the criminal history category is IV, for an advisory guidelines imprisonment range of 360

months to life (once the § 851 notice is amended).

### III.  Section 3553 (a) factors.

Section 3553(a) instructs that the "court shall impose a sentence sufficient, but not greater than necessary," and shall consider specific categories of information in making this determination. The pertinent categories are discussed below.

  **A.** **The nature and circumstances of the offense.** The offense is a multi-year, multi-person, and multi-drug conspiracy, for profit.  (PSR at ¶ 5).  The defendant dealt, and manufactured, crack cocaine.  (PSR at ¶ ¶ 11, 16, 3737, 43).  The defendant possessed body armor, firearms, and ammunition for his protection from others involved in the illegal distribution of narcotics.  *Id.*  At various times, Robert Perry worked as the defendant's middle-man, and delivered marijuana, and later crack cocaine, at the defendant's direction.

  **B.** **History and characteristics of the defendant.** The defendant is among the most culpable persons in this conspiracy, being "personally accountable for almost every known gram of cocaine involved in this conspiracy."  (PSR ¶ 46).

The defendant's known involvement in the cocaine trafficking trade started almost 17 years ago, when he was convicted at age 18 of possession of crack cocaine.  (PSR ¶ 63).  He was awarded a deferred judgment and 1 year of informal probation, but his probation was revoked.

By age 19, he was convicted of illegally carrying a concealed firearm and possessing crack cocaine.  (PSR ¶ 66).

Also at age 19, the defendant used a motorcycle to elude police after a traffic stop, and then

fled on foot. He possessed marijuana and crack cocaine. (PSR ¶ 67). At age 20, he was convicted, again, of fleeing from law enforcement officers. (PSR ¶ 69). His probation was revoked for smoking marijuana.

At age 22, the defendant was, again, stopped by police for a moving vehicle violation, and discovered to have 10 bags of marijuana, totaling 54.36 grams, and a loaded Smith & Wesson handgun. He was a member of the Crips street gang at the time, and had been since age 14. (PSR ¶¶ 78, 96). He claims to no longer be an "active" member of the Crips. (PSR ¶ 96). The defendant was convicted on drug and gun charges, and received three violations while under supervision for failing to maintain employment, being disruptive, and refusing to work. (PSR ¶ 78).

The defendant has been convicted of illegally carrying or possessing weapons numerous times, (PSR ¶¶ 66, 70, 71, 78). In this case, he kept guns and body armor to protect himself from other drug dealers, and had a loaded Smith & Wesson 9 mm and an Auto Ordinance .45 caliber semi automatic handgun, and boxes of ammunition for both firearms. (PSR ¶¶ 5, 34). When the search warrants were executed in this case, he directed Robert Perry to hide additional firearms and evidence from police. (PSR ¶ 44). These items included (a) a black rifle case containing an SKS rifle; (b) a purple duffle bag containing a .223 rifle; (c) a safe containing digital scales, a brick of marijuana (approx. 893 grams in a safe), five (5) baggies of marijuana, twenty-five dollars ($25) in United States currency, and miscellaneous items; (d) a white Polo cardboard box with ammunition; (e) a box for a Jensen Multi Media Player which contained a body armor vest; (f) a black duffle bag containing a .357 revolver and a 9mm automatic handgun; (g) a plastic bag containing a .45 caliber automatic handgun and a loaded .45 caliber Kimber magazine. Antwan's White's prints were found

on one of the baggies of marijuana in the safe.

Over the years, the defendant has had his probation or pretrial release revoked, or been found in contempt of court, 6 times. (PSR ¶¶ 65, 69, 70, 71). This includes the defendant's conduct in this case, where he cut off his electronic monitor and lived as a fugitive for approximately a year, in violation of his promise to this court to follow the rules of supervised release and appear at trial.

The defendant has been caught 8 times operating a motor vehicle without a license or with his license suspended or expired. (PSR ¶¶ 64, 65 , 68, 69, 72, 73, 76, 77).

The defendant obtained his GED. (PSR ¶ 111).

Since 2000, the defendant was only sporadically employed, and much of what can be verified appears to have been as a result of court orders while he was on probation or pretrial release. (PSR ¶¶ 113 - 120). Between at least 2004 and 2008, he distributed controlled substances for financial gain. (PSR ¶ 116). He has no assets. (PSR ¶ 122). He owes thousands of dollars in both unpaid child support payments and court fines and fees. (PSR ¶ 123).

**C.    The kinds of sentences available under relevant statutes and the advisory sentencing guidelines.**  Assuming the government amends the § 851 notice, the defendant must serve a minimum of 20 years imprisonment. (PSR ¶ 140). His advisory guidelines range is 360 months to life. A term of at least 10 years of supervised release is required, under 21 U.S.C. § 851(b)(1)(A).

**D.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**  Congress determined that the offense committed here, conspiring to distribute over 50 grams of cocaine base

or 500 grams of cocaine mixture, is so serious a crime when committed by someone with the defendant's criminal history that it merits a mandatory term of life imprisonment, unless the government amends its § 851 notice. The advisory guidelines sentencing ranges calculated by the probation office and the government reflect a similar degree of seriousness. A sentence that dramatically departs or varies downward from the guidelines range does not reflect the seriousness of the offense committed by this defendant, and is not "sufficient."

It is difficult to discern whether a guideline sentence, or, indeed, any sentence, will promote respect for the law in this defendant. Hopefully, the fact that the government chose not to obtain its conviction at trial, which would have sent the defendant to jail for life, but elected to offer him a plea agreement that affords him some hope of being freed from prison some day, will promote some respect for the law.

**E.     The need for the sentence imposed to afford adequate deterrence to criminal conduct.**   Notwithstanding his numerous convictions and arrests, this defendant has not been deterred from his life of lawlessness and drug-dealing. Assuming that he can be deterred, the sentence must be lengthy to have a deterrent effect, because lesser sentences and probation have, obviously, failed to work. A long sentence is also needed to deter others tempted to choose the same course as the defendant to head down a different path. *Ferguson v. United States,* 623 F.3d 627, 632 (8th Cir. 2010) (general deterrence is one of the "key purposes of sentencing.").

**F.     The need for the sentence imposed to protect the public from further crimes of the defendant.**   The defendant is, relatively speaking, a young man of almost 35. His criminal history, including this offense, and his history of probation violations, contempts of court, and

violation of pretrial release, prove the defendant is a high risk of recidivism. There is no reason to believe his incarceration since being apprehended as a fugitive in Colorado has dissuaded him from continuing his life of crime. A defendant's history of criminality and drug use since he was a teenager presents a "high risk of recidivism." *United States v. Williams,* 624 F.3d 889, 893 (8th Cir. 2010).

**G.** **The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.** The defendant can obtain educational and vocational training, and substance abuse treatment, from the Bureau of Prisons.

**H.** **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.** The fundamental principle of equal justice establishes a need to avoid unwannted sentence disparities among defendants with similar criminal histories, who commit similar crimes. One of the cardinal purposes of the U.S Sentencing Guidelines is to promote "reasonably uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." USSG, Ch. 1, Pt. A, Section 3, The Basic Approach (Policy Statement). In this case, some upward departure under USSG § 3A1.3 or an upward variance to fully account for the defendant's "past criminal conduct and high risk of recidism" would be reasonable*, United States v. Roillard*, 474 F.3d 551, 556 (8th Cir. 2007), to ensure that his sentence was not disparate from others with similar histories who committed similar acts. However, it would also not be unreasonable to simply sentence the defendant within the advisory guidelines range in the PSR, adjusted for his role in the

offense, to address these issues. A sentence of 360 months imprisonment is a sufficient sentence, and is not longer than necessary.

## IV. Conclusion.

The United States respectfully requests that, pursuant to 18 U.S.C. § 3553(a), the defendant be sentenced to 360 months in prison.

                                                                 Respectfully submitted,

                                                                 Nicholas A. Klinefeldt
                                                                 United States Attorney

                                         By:    /s/ *Craig Peyton Gaumer*
                                                      Craig Peyton Gaumer
                                                      Assistant United States Attorney
                                                      U.S. Courthouse Annex, Suite 286
                                                      110 E. Court Avenue
                                                      Des Moines, Iowa 50309
                                                      Tel: (515) 473-9300
                                                      Fax: (515) 473-9292
                                                      Email: craig.gaumer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2011, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

___ U.S. Mail ____ Fax _____ Hand Delivery

_X__ ECF/Electronic filing ____ Other means


UNITED STATES ATTORNEY

By: /s/    J. Beane
     Legal Assistant